IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SMITH INTERNATIONAL, INC. § <br> § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> THE EGLE GROUP, L.L.C., THE § <br> EGLE TRUST FOR MICHELLE A. § <br> EGLE, THE EGLE TRUST FOR JOHN § <br> M. EGLE, JR., THE EGLE TRUST § <br> FOR LAUREN E. EGLE, and DON M. § <br> EGLE § <br> § <br> Defendants. § | Civil Action No. H-04-4151 |

## MEMORANDUM

The Court previously entered an Order informing the parties that the Court has personal jurisdiction over all Defendants and will not transfer the case to the Western District of Louisiana. The following Memorandum explains the Court's reasoning.

### I.    Background

Plaintiff is a Delaware corporation with its principal place of business in Houston, Texas. Defendant the Eglé Group is a Louisiana limited liability company. Defendant Don Eglé is a resident of Louisiana, as are the beneficiaries of the Eglé Trusts and the current Trustee, Daniel Rees. Plaintiff asserts claims for breach of contract/breach of warranty/indemnity and negligent misrepresentation. In 1997, Defendants sold their interest in Tri-Tech Fishing Services, L.L.C. to Plaintiff. The Eglé Group, L.L.C. owned 50% of Tri-Tech. The members of the Eglé Group were Defendants the Eglé Trust for

1

Michelle A. Eglé, the Eglé Trust for John M. Eglé, Jr., and the Eglé Trust for Lauren E. Eglé, as well as Glen Dauterive and Ray S. Daugherty.  At the time, the Eglé Trusts were administered by Janet E. Harrison and Defendant Don Eglé as Co-Trustees.  Defendant Don Eglé signed the Purchase Agreement and other documents related to the sale as Co-Trustee of the Eglé Trusts.

As part of a lawsuit filed in Louisiana state court in 1998, Rose D. Eglé, the ex-wife of John Eglé, suing for herself and the Eglé Trusts, claimed an increased ownership in Tri-Tech, arguing that the 1994 sale of interests in the Eglé Group to Mr. Dauterive and Mr. Daugherty was a sham transaction and that the only lawful owners of the Eglé Group were the Eglé Trusts.  Further, the plaintiffs alleged that Tri-Tech knew or should have known that Mr. Dauterive and Mr. Daugherty were not lawful owners and thus were not entitled to proceeds from the sale of Tri-Tech to Smith International.  On June 1, 2004, a jury found that Smith was a successor to Tri-Tech, and thus liable for its wrongful acts, and found Tri-Tech liable for misappropriation and fraud.  Judgment was entered for the plaintiffs, and Smith was ordered to pay $3,468,919.29 in damages and $1,366,079.56 in interest to the Eglé Trusts.  Smith has appealed that judgment.

Plaintiff Smith claims, in this action, that, in the Purchase Agreement and related documents, Defendants represented and warranted that they owned 100% of their interest in Tri-Tech that was conveyed to Plaintiff Smith, and that the interest sold was free and clear of all liens, restrictions, and claims.

After the present action was commenced, Daniel A. Rees, Michelle A. Eglé, and Rose D. Eglé filed a complaint for declaratory and injunctive relief against Smith in the United States District Court for the Western District of Louisiana.  The plaintiffs in that lawsuit

ask for a judgment declaring that they do not owe any indemnity or other obligation to Smith under the Purchase Agreement, and specifically declaring that they do not owe the alleged indemnity obligation sought to be enforced by Smith in this action. The plaintiffs in the Louisiana federal action also seek to enjoin Smith from pursuing its claims in this lawsuit against the Eglé Trusts and to order Smith to dismiss all of its claims against Defendants with prejudice.

Each Defendant has filed a motion asking the court to: (1) quash service of process; (2) dismiss the case for lack of personal jurisdiction, insufficiency of service of process, and improper venue; or, alternatively (3) transfer venue. The Trusts also argue that the case should be dismissed for failure to join persons needed for just adjudication.

## II. Discussion

*A. Dismissal of the Eglé Trusts*

The Eglé Trusts argue that they are not legal entities capable of being sued directly. The Trusts say that Plaintiff should have sued their trustee, Mr. Rees. The Trusts are correct. In Texas, a trust is not a party that can sue or be sued. *Thompson v. Vinson & Elkins*, 859 S.W.2d 617, 623 (Tex.App.- Hous. [1 Dist.] 1993, writ denied) (citations omitted). The trustee must be the named defendant, and the trustee must be sued in his capacity as the trustee. *Rainbow Trust v. W. Am. Nat'l Bank, N.A.*, No. 2-02-347-CV, 2003 WL 21983257, at *2 (Tex. App.- Fort Worth Aug. 21, 2003).

Plaintiff responded by filing a motion for leave to file a second amended complaint to add Mr. Rees as a Defendant. Defendants opposed this motion to amend, arguing that adding Mr. Rees as a Defendant would be futile because the Eglé Trusts were not parties to the Purchase Agreement and that this Court does not have personal jurisdiction over

Mr. Rees.  Both of these arguments are unmeritorious.  The Court will explain later why it has personal jurisdiction over Mr. Rees, as Trustee of the Eglé Trusts.  The Trusts are correct that, as members of the Eglé Group, the Trusts would not normally be bound by the Agreement.  However, at the end of the Purchase Agreement, it says "IN WITNESS WHEREOF, the parties hereto have executed this instrument as of the date and year first above written."  Following this, under the heading "SELLERS," the following people signed on behalf of the Eglé Group: Ray Daugherty, Glenn Dauterive, and Defendant Don Eglé, as Co-Trustee for the Eglé Trusts and a Manager of the Eglé Group.  Ms. Janet E. Harrison, the other Co-Trustee of the Eglé Trusts, also signed a Consent as part of the sale which stated that "[t]he signature of Don M. Egle as Co-Trustee for the Trusts on the Agreement and all documents necessary to complete the transactions contemplated by the Agreement shall be sufficient to bind the Trusts."  Because the Trusts are bound by the Agreement, their Trustee, Mr. Rees, is a proper Defendant in this suit.  Therefore, Plaintiff may amend its complaint; however, the Eglé Trusts are dismissed from this case because they are not proper parties.

 B. *Service of Process on The Eglé Group*

 The Eglé Group argues that the service of process on them was insufficient and should be quashed, and that this action should be dismissed as to the Eglé Group for insufficiency of service of process because Plaintiff failed to serve Defendant the Eglé Group at the correct address.  After reviewing the pleadings, the Court concludes that Plaintiff inadvertently served Defendant the Eglé Group at the incorrect address.  Therefore, the Court will quash the insufficient service of process on the Eglé Group, but

declines to dismiss the case against it as a result. Instead, Plaintiff is directed to serve Defendant the Eglé Group at the correct address, if it has not already done so.

### C. *Personal Jurisdiction over Defendants*

Each Defendant argues that the case should be dismissed for lack of personal jurisdiction. After reviewing the parties' arguments and the relevant facts, the Court concludes that it has personal jurisdiction over all Defendants.

In order to exercise personal jurisdiction over a nonresident defendant, the defendant must be amenable to service of process under the State's long-arm statute and the assertion of personal jurisdiction must be consistent with the due process clause of the Fourteenth Amendment. *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (citation omitted). Texas's long-arm statute has been interpreted to extend to the limits of due process; therefore, the Court only need ensure that subjecting Defendants to suit in this Court would not offend due process. *Id*. (citation omitted).

Subjecting a non-resident defendant to suit in this Court comports with due process if (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (citing *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Due Process Clause therefore requires that nonresident defendants have "fair warning" that their activity might subject them to a foreign court's jurisdiction.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J. concurring in judgment)).

Minimum contacts can be established through contacts that give rise to either general or specific jurisdiction. *Mink*, 190 F.3d at 336 (citation omitted). Here, the parties dispute whether Defendants' contacts with Texas give rise to specific jurisdiction. When a Court seeks to assert specific jurisdiction over a nonresident defendant, the "fair warning" requirement is satisfied if the non-resident defendant has "'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Because the Court has not held an evidentiary hearing on Defendants' Motions, the Court must accept Plaintiff's allegations as true and resolve all factual disputes in its favor. *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).

Defendants argue that this Court does not have personal jurisdiction over them. In particular, they assert that none of them entered Texas during the negotiation and closing of the Purchase Agreement; Plaintiff conducted its due diligence on Tri-Tech in Louisiana; the closing for the transaction took place in Louisiana; Plaintiff paid for the acquisition in Louisiana; and all of the obligations under the Purchase Agreement were performed at the closing.

Plaintiff responds that Defendants' contacts are sufficient to subject them to this Court's jurisdiction because Defendants: (1) contracted with a Texas resident; (2) received and acknowledged receipt of monies and other valuable consideration from

Houston, Texas; (3) entered into various agreements and contracts performable by either Plaintiff or Defendants in Houston, Texas; (4) made various representations and statements to Smith in Houston, Texas with the expectation and knowledge that they would be relied upon in Houston, Texas; and (5) entered into various transactions with Smith that were governed by Texas law.

Contracting with a Texas resident is relevant to the consideration of personal jurisdiction, but is not sufficient to establish minimum contacts. *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999). When a nonresident defendant has contracted with a resident, the question is whether "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" suggest that "defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

Defendants are correct that, in this case, the agreements were all executed in Louisiana, and that at least some of the due diligence took place in Louisiana. However, Plaintiff claims that Defendants made certain representations and warranties to Plaintiff at Plaintiff's place of business in Houston, Texas during the course of the sale. Even if Defendants were not in Texas at the time that the representations were made, by making the representations, Defendants purposefully availed themselves of the benefits and protections of Texas law by engaging in activity outside of the state that had "reasonably foreseeable consequences in the state." *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir. 1981). In addition, the cause of action is directly related to the alleged contacts. *Id*. at 1267. It does not matter whether Defendants entered Texas during this time. *Burger King*, 471 U.S. at 476. The Fifth Circuit has held that a defendant's initiation of a

single telephone call, during which the defendant allegedly committed a tort, was sufficient to establish personal jurisdiction over the defendant. *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir. 1982); *see also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211-12 (5th Cir. 1999) (saying that a single act by a defendant directed towards Texas that gives rise to a cause of action by a plaintiff can support a finding of minimum contacts) (citations omitted).

Though the tort alleged to have been committed in *Brown* was an intentional tort, *Brown* does not state that the proposition is limited to intentional torts. *See also Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1188-1190 (5th Cir. 1984); *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999). In addition, the Texas long-arm statute makes those who commit a tort in whole or in part in the State amenable to service of process through the secretary of state. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 17.044(b), 17.042. The statute does not specify that the nonresident must commit an intentional tort.

Defendants argue that Plaintiff cannot rely on a claim that Defendants misrepresented certain facts regarding the transaction because the Agreement states that

> 12.2 <u>Entire Agreement.</u> This Agreement (with its Schedules and Exhibits) contain and are intended as a complete statement of all of the terms and the arrangements between the parties hereto with respect to the matters provided for herein and therein and supersede any and all previous agreements and understandings between the parties hereto with respect to those matters.

This provision does not help Defendants. First, the provision makes no mention of any representations that may have been made. In addition, if Defendants failed to exercise reasonable care in making certain representations to Plaintiff regarding their interest in Tri Tech, those representations turned out to be false, Plaintiff justifiably relied on the

8

representations in entering into the Agreement, and Plaintiff lost money as a result, then Defendants are liable for those misrepresentations. *See* Restatement (Second) of Torts § 552 (1977). Texas has adopted the Restatement of Torts of negligent misrepresentation. *Compass Bank v. King, Griffin & Adamson P.C.*, 388 F.3d 504, 505 n.1 (5th Cir. 2004) (citing *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

In the Agreement, Defendants also agreed to indemnify Plaintiff for any damages resulting from a misrepresentation or breach of warranty in the Agreement. Any indemnity would necessarily be paid to Plaintiff in Texas. In addition, the Agreement provides for the following:

> 10.1 <u>Further Assurances.</u> From time to time after the Closing Date, each party hereto shall . . . execute and deliver such other and further instruments of sale, assignment, assumption, transfer and conveyance and take such other and further action as reasonably requested in order to give effect to the transactions contemplated hereby, including, without limitation, obtaining any requisite or approvals for the transfer of any Contract not obtained before the Closing.

Therefore, it was foreseeable that partial performance of the obligations in the Agreement by Defendants would be directed at Texas. Based on these factors, the Court believes that Defendants had "fair warning" that their activity might subject them to the jurisdiction of a Texas court.

This is reinforced by the fact that section 12.3 of the Agreement provides that the Agreement shall "be governed by and construed in accordance with" Texas law. While this factor alone also does not establish minimum contracts, when combined with the other factors, it is enough to convince the Court that Defendants could have reasonably anticipated being haled into Court in Texas. *Burger King*, 471 U.S. at 482. Therefore, the Court is persuaded that Defendants have established minimum contacts with the State of Texas.

9

Having found that the minimum contacts prong has been satisfied, the Court must ensure that the exercise of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. Factors to be considered are: "[(1) t]he burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies'; and (5) 'the shared interest of the several States in furthering fundamental substantive social policies.'" *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 874 (5th Cir. 1999) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 n.3 (5th Cir. 1994)) (quoting *Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990)) (citing *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Defendants have not presented such a case. First, "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). In addition, though Defendants contend that it would be a great burden to litigate the case in Texas, the Court does not find this burden to be heavy enough that it amounts to a denial of due process because of the geographical proximity of the Western District of Louisiana to this Court. Texas may not necessarily be a more efficient forum than Louisiana because there is already a similar action

10

pending in a federal district court there; however, it will certainly not be sufficiently less efficient so as to amount to a denial of due process because this action was filed more than two months before the Louisiana action.

Therefore, the Court concludes that it does have personal jurisdiction over all Defendants. Since the Eglé Trusts are bound by the Agreement, this Court has jurisdiction over Don Eglé because he signed the Agreement as Co-Trustee of the Eglé Trusts. In addition, Defendant Don Eglé signed the Agreement as a Manager of the Eglé Group. Defendant Don Eglé denies that he ever had any communications with any person acting or purporting to act on behalf of Plaintiff with regards to the Agreements or the related transactions. However, Plaintiff alleges that Defendants made misrepresentations directed to Plaintiff at Plaintiff's place of business in Texas, and the Court must accept all of Plaintiff's allegations as true at this stage. As the current trustee of the Eglé Trusts, Daniel Rees is also subject to this Court's jurisdiction.

    D. *Service of Process on Defendant Don Eglé*

Defendant Don Eglé also argues that the case against him should be dismissed because the service upon him through the secretary of state was improper. However, as Plaintiff notes, section 17.044(b) of the Texas Civil Practice and Remedies Code provides that

> The secretary of state is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party.

A nonresident does business in Texas if the nonresident: "(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in

11

part in this state; (2) commits a tort in whole or in part in this state . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 17.042.  Defendant Don Eglé signed the Agreement on behalf of the Eglé Trusts and the Eglé Group as sellers, and the Agreement was to be performed in whole or in part by Plaintiff and Defendants in Texas.  In addition, taking Plaintiff's allegations as true, Defendant Don Eglé committed the tort of negligent misrepresentation, the injurious effects of which were directed at Plaintiff in Texas.  Therefore, the service on Defendant Don Eglé was proper.

### E.  *Motion To Dismiss for Failure To Join Necessary Parties*

The Eglé Trusts argue that the entire action should be dismissed as to all Defendants because the beneficiaries of the Trusts are necessary parties to the lawsuit, but have not, and cannot, be joined.  Defendant the Eglé Trusts cite the case of *Armstrong v. Armstrong* for the proposition that, under Texas law, "[t]he general rule is that in suits affecting trusts or respecting the trust property, the beneficiary is a necessary party." 532 S.W.2d 406, 408 (Tex. Civ. App.- Eastland 1976, no writ) (citation omitted).  However, there are many exceptions to this rule. *Slay v. Burnett Trust*, 187 S.W.2d 377, 382 (Tex. 1945). Under Texas law, the beneficiaries are not necessary parties to this suit because this dispute involves no conflict between the trustee and the beneficiaries, or between or among the beneficiaries.  In addition, the evidence suggests that Mr. Rees can sue or defend in his own name on behalf of the Trusts because he is a Plaintiff, in his capacity as Trustee, in the lawsuit brought against Smith in the Western District of Louisiana. *See* Elaine A. Grafton Carlson, 1 McDonald & Carlson Texas Civil Practice § 5:46 (updated Oct. 2004), WL 1 McDonald & Carlson Tex. Civ. Prac. § 5:46; Mary Babb Morris, 72

12

Tex. Jur. 3d Trusts § 224 (updated Nov. 2004), WL 72 Tex. Jur. 3d Trusts § 224. Therefore, the Court will not dismiss this action for failure to join necessary parties.

F.  *Motion To Dismiss or Transfer for Improper Venue*

Defendants further argue that venue is improper in the Southern District of Texas. Plaintiff counters that venue is proper pursuant to 28 U.S.C. § 1391(a)(2), which provides that

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . .

The Court finds that venue is proper in this district.  Venue is not improper here even if the activities in Louisiana were more substantial or the most substantial.  As long as substantial activities took place in this district, this district is a proper venue.  The Court's personal jurisdiction analysis demonstrates that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here. *See Long v. Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003) (venue proper where Defendant communicated with Plaintiff, a Texas resident, in Texas, and the content of those communications allegedly gave rise to Plaintiff's tort causes of action).  Therefore, this Court declines to dismiss or transfer this case for improper venue.

G. *Motion To Transfer Pursuant to 28 U.S.C. § 1404(a)*

Lastly, Defendants request that this case be transferred to the Western District of Louisiana for the convenience of the parties and witnesses and in the interests of justice. *See* 28 U.S.C. § 1404(a).  The factors to be weighed that are relevant to this case include the following: (1) the plaintiff's choice of forum; (2) the convenience of the witnesses

13

and the parties; (3) the location of books and records; (4) the desire to avoid multiplicity of litigation from a single transaction; (5) the relative docket conditions in the two courts; and (6) the interest in having federal judges who are familiar with the applicable state law interpret that law. 15 Wright & Miller, Federal Practice and Procedure §§ 3847-3854 (1986). Defendants rely heavily on the fact that all Defendants reside in Louisiana, most of the events surrounding the case occurred in Louisiana, and most of the potential witnesses reside in Louisiana. However, courts have held that section 1404(a) should not be used to transfer an action where there is a relatively short distance between the two districts, as is the case here. *Id*. § 3854, at 470. The other factors also do not favor a transfer. Although there is a similar action pending in federal court in Louisiana, that action was filed after this one. In addition, though Plaintiff and Defendants disagree as to which state's law will be applied to resolve each of Plaintiff's claims, any disagreement as to the terms of the Agreement will be resolved under Texas law. Given all of these factors, this Court declines to transfer this case to the Western District of Louisiana.

SIGNED this 3rd day of June, 2005.

                                                    KEITH P. ELLISON
                                                    UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**