IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUL 2 5 2005

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| SMITH INTERNATIONAL, INC. | § | |
| | § | |
| V. | § | |
| | § | |
| THE EGLE GROUP, L.L.C., DON M. | § | CIVIL ACTION NO. H-04 4151 |
| EGLE, and DANIEL REES, AS TRUSTEE | § | (Jury Trial Demanded) |
| OF THE EGLE TRUST FOR MICHELLE | § | |
| A. EGLE, THE EGLE TRUST FOR JOHN | § | |
| M. EGLE, JR., AND THE EGLE TRUST | § | |
| FOR LAUREN E. EGLE | § | |

**MEMORANDUM OF DEFENDANT DANIEL A. REES, AS TRUSTEE OF
THE EGLE TRUST FOR MICHELLE A. EGLE, THE EGLE TRUST FOR JOHN
M. EGLE, JR., AND THE EGLE TRUST FOR LAUREN E. EGLE IN SUPPORT OF
MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION
AND IMPROPER VENUE; OR ALTERNATIVELY, TO TRANSFER TO
PROPER, OR FURTHER ALTERNATIVELY, MORE CONVENIENT, VENUE**

Norman W. Peters, Jr.
State Bar No. 00788194
Federal Bar No. 17336
KASOWITZ, BENSON, TORRES &
    FRIEDMAN LLP
700 Louisiana Street, Suite 2200
Houston, Texas  77002-2730
(713) 220-8800
Fax: (713) 222-0843

ATTORNEY-IN-CHARGE FOR
DEFENDANTS THE EGLE GROUP,
L.L.C., THE EGLE TRUST FOR
MICHELLE A. EGLE, THE EGLE TRUST
FOR JOHN M. EGLE, JR., and THE EGLE
TRUST FOR LAUREN E. EGLE

OF COUNSEL:
J. Michael Wilson
State Bar No. 24047125
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
700 Louisiana, Suite 2200
Houston, Texas 77002
Telephone:      (713) 220-8800
Facsimile:      (713) 222-0843

# I. TABLE OF CONTENTS

I.     TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

II.    TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

III.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV.   SUMMARY OF ARGUMENT, ISSUES, AND STANDARDS OF REVIEW . . . . . . . . 3

V.    FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.   LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.     Rees is Not Subject to Service Under the Texas Long-Arm Statute and
            thus Smith's Attempted Service Must be Quashed. . . . . . . . . . . . . . . . . . . . . . . . 5

     B.     Rees is Not Subject to Personal Jurisdiction in Texas, and the Action
            Should be Dismissed as to Him . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           1.     Smith Cannot Establish That Rees, Individually, Has Sufficient
                Minimum Contacts With the State of Texas . . . . . . . . . . . . . . . . . . . . . . . 9

                a.     Smith Has Not Established Specific Jurisdiction as to Rees . . . . 10

                b.     Smith Has Not Established General Jurisdiction as to Rees . . . . 11

           2.     The Exercise of Personal Jurisdiction Over Rees in Texas Would
                Not be Consistent With Traditional Notions of Fair Play and
                Substantial Justice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

           3.     Personal Jurisdiction Over Rees Cannot be Established Through
                the Conduct of Others . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                a.     The Egle Trusts Did Not Contract With a Texas Resident
                     and Thus the Purchase Agreement Cannot Provide a Basis
                     to Confer Personal Jurisdiction on Rees . . . . . . . . . . . . . . . . . . . 13

                     (1)     The Egle Trusts are Not "Sellers" Under the
                         Purchase Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                     (2)     The Egle Trusts are Merely "Members" of the
                         Egle Group . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                     (3)     The "Consent" Does Not Create Personal Liability
                         For the Egle Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                b.     The Egle Trusts and the Predecessor Trustees Were Not
                     Involved in the Underlying Negotiation and Sale . . . . . . . . . . . 19

c.      There Were No Receipts of Monies From Texas . . . . . . . . . . . . 20

d.      No Misrepresentations or Warranties Were Made in Texas
by Rees or the Predecessor Trustees . . . . . . . . . . . . . . . . . . . . . . 21

C.      Venue is Improper in the Southern District of Texas . . . . . . . . . . . . . . . . . . . . 22

1.      This Action Should be Dismissed for Improper Venue, Pursuant to 28
U.S.C. § 1406(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

2.      Alternatively, This Action Should be Transferred to the Western
District of Louisiana in the Interest of Justice, Pursuant to 28 U.S.C.
§ 1406(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

D.      Even if Venue Were Proper Here, This Action Should, For the Convenience
of the Parties and Witnesses and in the Interest of Justice, be Transferred to
the Western District of Louisiana, Which is a More Convenient Venue . . . . . . . 25

VII.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VIII.   CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

IX.     APPENDIX (separately bound) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TAB

Rainbow Trust v. W. Am. Nat. Bank, N.A.,
No. 2-02-347-CV, 2003 Tex. App. LEXIS 7153 (Tex. App.—Fort Worth
Aug. 21, 2003, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Affidavit of Daniel A. Rees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

May 3, 2000 Judgment on Motion appointing Daniel A. Rees as Trustee of
the Egle Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

True and correct copy of excerpts from the deposition of Richard Werner,
completed July 20, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Testimony of Richard Werner in the underlying Louisiana Lawsuit . . . . . . . . . . . . . . . 5

April 16, 1997 Opinion letter from Joseph C. Giglio, Jr. of Liskow & Lewis . . . . . . . . 6

Testimony of Joseph C. Giglio, Jr., in the underlying Louisiana Lawsuit . . . . . . . . . . . 7

Certified copy of excerpts from the Directed Verdict Argument in the underlying
Louisiana Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Black v. Bruner,
No. 04-02-00733-CV, 2003 Tex. App. LEXIS 1887 (Tex. App.—San Antonio
March 5, 2003, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Louisiana Revised Statute 12:1320 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Louisiana Revised Statute 9:2113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Agreement Relating to the Disbursement of Proceeds of the Sale by Egle Group,
L.L.C. and Tri-State Technologies, L.L.C. to Smith International, Inc. . . . . . . . . . . . . . 12

Authorization to Escrow Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## II. TABLE OF AUTHORITIES

**FEDERAL CASES:**

Abramoff v. Shake Consulting, L.L.C.,
288 F. Supp. 2d 1 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Access Telecom, Inc. v. MCI Telecomms. Corp.,
197 F.3d 694, 717 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Aguacate Consolidated Mines, Inc. v. Deeprock, Inc.,
566 F.2d 523 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Asahi Metal Industry Co., Ltd. v. Superior Court of California,
480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 92 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Asarco, Inc. v. Glenara, Ltd.,
912 F.2d 784 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Burger King Corp. v. Rudzewicz,
741 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1995) . . . . . . . . . . . . . . . . . . . . . . 8, 10

Calder v. Jones,
456 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 13

Diamond v. Thompson, 523 F.2d 1201 (5th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Familia de Boom v. Arosa Mercantil, S.A.,
629 F.2d 1134 (5th Cir. 1980),
cert. denied, 451 U.S. 1008, 101 S. Ct. 2345, 68 L. Ed. 2d 861 (1981) . . . . . . . . . . . . . . . 3

Hanson v. Denckla,
357 U.S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958) . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Harper Macleod Solicitors v. Keaty & Keaty,
260 F.3d 389 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Helicopteros Nacionales de Colombia, S.A. v. Hall,
466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) . . . . . . . . . . . . . . . . . . . . . 8, 11, 12

International Shoe Co. v. Washington,
326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Jarvis Christian College v. Exxon Corp.,
845 F.2d 523 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Jobe v. ATR Marketing, Inc.,
87 F.3d 751 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Mink v. AAAA Development LLC,
   190 F.3d 333 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Navarro Savings Ass'n v. Lee,
   446 U.S. 458, 100 S. Ct. 1779, 64 L. Ed. 2d 425 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Patin v. Thoroughbred Power Boats, Inc.,
   294 F.3d 640 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Pugh v. Arrow Electronics, Inc.,
   304 F. Supp. 2d 890 (N.D. Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Seariver Maritime Financial Holdings, Inc. v. Pena,
   952 F. Supp. 455 (S.D. Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Shaffer v. Heitner,
   433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Stuart v. Spaderman,
   772 F.2d 1185 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Wilson v. Belin,
   20 F.3d 644 (5th Cir. 1994),
   cert. denied, 513 U.S. 930, 115 S. Ct. 322, 180 L. Ed. 2d 282 (1994) . . . . . . . . . . . . . . . . . 9

World-Wide Volkswagen Corp. v. Woodson,
   444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATE CASES:**

American Type Culture Collection, Inc. v. Coleman,
   83 S.W.3d 801 (Tex. 2002),
   cert. denied, 537 U.S. 1131, 123 S. Ct. 1271, 154 L. Ed. 2d 1025 (2003) . . . . . . . . . . . . . . 7

Black v. Bruner,
   No. 04-02-00733-CV, 2003 Tex. App. LEXIS 1887 (Tex. App.—San Antonio
   March 5, 2003, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

BMC Software v. Marchand,
   83 S.W.3d 789, 797 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Boreham v. Hartsell,
   826 S.W.2d 193, 195 (Tex.App.—Dallas 1992, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . 7

C.M. Asfahl Agency v. Tensor, Inc.,
   135 S.W.3d 768, 791 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) . . . . . . . . . . . . . 13

<u>CSR, Ltd. v. Link</u>,
925 S.W.2d 591, 594–95 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Dowdy v. Miller</u>,
122 S.W.2d 816, 823 (Tex. App.—Amarillo 2003, no pet.) . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Gonzalez v. Mission American Insurance Co.</u>,
795 S.W.2d 734, 737 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Grain Dealers Mutual Insurance Co. v. McKee</u>,
943 S.W.2d 455, 458 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Liberty Mutual Insurance Co. v. American Employers Insurance Co.</u>,
556 S.W.2d 242, 245 (Tex. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

<u>Lockheed Martin Corp. v. Gordon</u>,
16 S.W.3d 127, 134–35 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) . . . . . . . . . . . 13

<u>Lozano v. Hayes Wheels International, Inc.</u>,
933 S.W.2d 245, 247 (Tex. App.—Corpus Christi 1996, no writ) . . . . . . . . . . . . . . . . . . 6, 7

<u>Phippen v. Deere & Co.</u>,
965 S.W.2d 713, 726 (Tex. App.—Texarkana 1998, no writ) . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Rainbow Trust v. Western American National Bank, N.A.</u>,
No. 2-02-347-CV, 2003 Tex. App. LEXIS 7153 (Tex. App.—Fort Worth 2003
August 21, 2003, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

<u>Reilly v. Rangers Management, Inc.</u>,
727 S.W.2d 527 (Tex. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Schlobohm v. Shapiro</u>,
784 S.W.2d 355, 356 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Shapolsky v. Brewton</u>,
56 S.W.3d 120, 139 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) . . . . . . . . . . . . 13

<u>Thompson v. Vinson & Elkins</u>,
859 S.W.2d 617, 623 (Tex. App.—Houston [1st Dist.] 1993, writ denied) . . . . . . . . . . . . . 9

**STATUTES, RULES, AND OTHER AUTHORITIES**

28 U.S.C. § 1391 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

28 U.S.C. § 1404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1406 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 24

Black's Law Dictionary (West, 5th ed. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Rules of Civil Procedure, Rule 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Civil Procedure, Rule 12(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Civil Procedure, Rule 12(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 22

Louisiana Revised Statute 9:2113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Louisiana Revised Statute 12:1320 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Texas Business Corporations Act article 5.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Texas Civil Practice and Remedies Code § 17.041 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Texas Civil Practice and Remedies Code § 17.042 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Texas Civil Practice and Remedies Code § 17.044 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Texas Revised Civil Statute Annotated article 1528n, § 4.03 . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**MAY IT PLEASE THE COURT:**

Daniel A. Rees ("Rees"), as Trustee for The Egle Trust For Michelle A. Egle, The Egle Trust For John M. Egle, Jr., and The Egle Trust For Lauren E. Egle (collectively, the "Egle Trusts"), who is sought to be made a defendant herein, submits this memorandum in support of his motion to quash plaintiff's purported service of process and to dismiss, as against mover, the Second Amended Complaint of Plaintiff, Smith International, Inc. ("Smith"), pursuant to F.R.C.P. 12(b)(2) for lack of jurisdiction over the person, pursuant to F.R.C.P. 12(b)(5) for insufficiency of service of process, and pursuant to F.R.C.P. 12(b)(3) and under 28 U.S.C. § 1406(a), on the grounds of improper venue, or alternatively, in the interest of justice, to transfer from an improper to a proper venue, namely, the Western District of Louisiana, under 28 U.S.C. § 1406(a); or further alternatively, if venue is proper here, to transfer this action to the United States District Court for the Western District of Louisiana, which is a more convenient venue for the convenience of the parties and witnesses and in the interest of justice under 28 U.S.C. § 1404(a) ("Motion to Dismiss/Transfer").

### III. INTRODUCTION

Rees, as trustee, hereby adopts by reference all introductory assertions presented to this Court in the Memorandum in Support of Defendants the Egle Trust for Michelle A. Egle, the Egle Trust for John M. Egle, Jr., and the Egle Trust for Lauren E. Egle in Support of Their Motion to Quash Service of Process and to Dismiss for Lack of Personal Jurisdiction, Insufficiency of Service of Process, Improper Venue, and Failure to Join Persons Needed for Just Adjudication; or Alternatively, to Transfer to Proper, of Further Alternatively, More Convenient,

Venue (including its appendix and all associated documents) filed with this Court on January 7, 2005 and subsequently supplemented on January 26, 2005.[1]

Rees acknowledges that this Court previously entertained a motion to dismiss filed on behalf of the Egle Trusts (and a similar motion filed by each of two other defendants) and signed an order on May 18, 2005 ("Order") dismissing the Egle Trusts as parties to this lawsuit.[2]  The Court later delivered a memorandum on June 3, 2005 ("Memorandum"), explaining the rationale behind its findings in the Order.[3]

Rees was not a party to this action at the time of the Court's earlier ruling.[4]  As a nonparty, Rees could not have previously raised any of the defenses asserted herein. Accordingly, he is entitled to now present to the Court the reasons why this case should be dismissed as to him (and in fact he must do so now to avoid the potential sanction of waiver of his defenses).

Further, Smith's tenuous factual allegations of the existence of personal jurisdiction over the defendants in this case, which allegations this Court was bound to accept as true for purposes of ruling on the earlier-filed motions to dismiss, have since been called into serious question.[5] As discussed in greater detail below, during his Court-ordered deposition secured on July 20, 2005, Richard Werner ("Werner"), president of Smith Services, contradicted many of Smith's

---

[1] See Docs. 27, 28, 29, 30, 38, 39, 53 and 54.

[2] See Doc. 61.

[3] See Doc. 63.

[4] For this reason, the Court's earlier findings are not binding on Rees.  See, e.g., Diamond v. Thompson, 523 F.2d 1201, 1203 (5th Cir. 1975) (district court's reference in its decree to a person who was a non-party was a nullity, since that person "was not a party, and could not be subjected to a judgment in a case to which it was not a party.").

[5] As the Court noted in its Memorandum, "[b]ecause the Court has not held an evidentiary hearing on Defendants' Motions, the Court must accept Plaintiff's allegations as true and resolve all factual disputes in its favor." Memorandum [Doc. 63], at p. 6; see also Memorandum at p. 11 ("...the Court must accept all of Plaintiff's allegations as true at this stage.")

159461

2

earlier factual allegations or clarified that those allegations have nothing to do with the Egle Trusts. In light of the de novo jurisdictional analysis this Court must undertake with respect to Rees, and because Smith's earlier assertions regarding jurisdiction have now been contradicted or shown to be irrelevant as to the Egle Trusts, Smith cannot satisfy its burden to establish personal jurisdiction over Rees.[6] Accordingly, this action should be dismissed as to Rees.

Alternatively, Rees urges this court to exercise its discretion and conduct an evidentiary hearing on Rees' motion, so that Smith will be required to meet its burden of establishing the existence of personal jurisdiction over Rees in this action under the preponderance of the evidence standard, a burden Smith cannot meet.

## IV. SUMMARY OF ARGUMENT, ISSUES, AND STANDARDS OF REVIEW

A.    Rees does not regularly engage in business in the State of Texas, and in fact, has never engaged in business in the State of Texas in his capacity as trustee of the Egle Trusts. Rees also has never committed a tort in the State of Texas. For these reasons, Smith's invalid attempted service of a summons and complaint on Rees under the Texas Long-Arm Statute, Texas Civil Practice and Remedies Code § 17.041, et seq., should be quashed, and Smith's claims against Rees dismissed. "[W]hen service of process is challenged, the party on whose behalf service is made has the burden of establishing its validity."[7] Courts require "strict compliance with the terms of the Texas long arm statute."[8]

B.    Smith has entirely failed to plead facts sufficient to establish personal jurisdiction over Rees. Smith merely states that Rees is the court-appointed trustee of the Egle Trusts, and makes

---

[6] See Rainbow Trust v. W. Am. Nat. Bank, N.A., No. 2-02-347-CV, 2003 Tex. App. LEXIS 7153 at *2 (Tex. App.—Fort Worth 2003 Aug. 21, 2003, no pet.), which is attached to the Appendix at Tab "1".

[7] Familia de Boom v. Arosa Mercantil, S.A., 629 F.2d 1134, 1139 (5th Cir. 1980), cert. denied, 451 U.S. 1008, 101 S. Ct. 2345, 68 L. Ed. 2d 861 (1981).

[8] Harper Macleod Solicitors v. Keaty & Keaty, 260 F.3d 389, 398 (5th Cir. 2001).

no allegations that Rees, a nonresident, has any contacts whatsoever with the forum state. Any allegations Smith might point to are not only conclusory in nature but are also flatly contradicted by the documentary evidence as well as the deposition testimony of Smith's own witness. In fact, because Rees has no contacts sufficient to confer personal jurisdiction upon him in the State of Texas, and because he cannot adopt the alleged jurisdictional status of the Egle Trusts or the prior co-trustees, he is therefore not subject to suit here. For these reasons, Smith's claims against Rees must be dismissed. "The district court's determination of the exercise of personal jurisdiction over a defendant is a question of law subject to de novo review."[9]

C.      Finally, even if Rees were subject to personal jurisdiction here and had been properly sued (each of which is denied in the first instance), venue in this district would nevertheless be wrong, because a substantial part of the events giving rise to Smith's claims against Rees did not occur in this district. This suit arises under a written agreement through which Smith acquired a Louisiana limited liability company from its two Louisiana owners. The transaction closed in Louisiana, the obligations created by that written agreement were performed in Louisiana, and most importantly, the alleged representations and warranties upon which this suit is based were all made in Louisiana and, if breached (which is denied), were so breached in Louisiana. Accordingly, this action should be dismissed due to improper venue as well. Alternatively, if this action is not dismissed against Rees, then it should be transferred to the Western District of Louisiana, where venue would be proper and is more convenient for the parties and witnesses, and where jurisdiction could be obtained over all parties at interest. "Decisions to effect a

---

[9] Mink v. AAAA Dev. LLC, 190 F.3d 333, 335 (5th Cir. 1999).

[Section] 1404 transfer are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion."[10]

## V.  FACTUAL BACKGROUND

Rees adopts by reference the recitation of facts presented to this Court in the Memorandum in Support of Defendants the Egle Trust for Michelle A. Egle, the Egle Trust for John M. Egle, Jr., and the Egle Trust for Lauren E. Egle in Support of Motion to Quash Service of Process and to Dismiss for Lack of Personal Jurisdiction, Insufficiency of Service of Process, Improper Venue, and Failure to Join Persons Needed for Just Adjudication; or Alternatively, to Transfer to Proper, of Further Alternatively, More Convenient, Venue (including its appendix and all associated documents) previously filed with this Court on January 7, 2005 and subsequently supplemented on January 26, 2005.[11]

## VI.  LAW AND ARGUMENT

**A.    Rees is Not Subject to Service Under the Texas Long-Arm Statute and Thus Smith's Attempted Service Must be Quashed**

A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the 14th Amendment to the United States Constitution and the Texas Long-Arm Statute are satisfied.[12]  The Long-Arm Statute provides a constitutional means by which a plaintiff in the forum state can seek to secure the appearance of a foreign defendant.  The Long-Arm Statute authorizes the exercise of jurisdiction over those who do business in Texas.[13]  In addition to the jurisdictional analysis under which engaging in business in the forum state is determined, the following acts constitute "doing business" in the

---

[10] Jarvis Christian Coll. v. Exxon Corp., 845 F.2d 523, 528 (5th Cir. 1988).

[11] See Docs. 27, 28, 29, 30, 38, 39, 53 and 54.

[12] TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 et seq.; CSR, Ltd. v. Link, 925 S.W.2d 591, 594–95 (Tex. 1996).

[13] Schlobohm v. Shapiro, 784 S.W.2d 355, 356 (Tex. 1990).

state: (1) contracting by mail or otherwise with a Texas resident if either party is to perform the contract in whole or in part in this state; (2) committing a tort in whole or in part in this state; or (3) recruiting Texas residents, directly or through an intermediary located in this state, for employment inside or outside the state.[14]

Rees is domiciled in the Parish of St. Martin in the State of Louisiana, and thus is not a resident of the State of Texas. [15] His affidavit clearly demonstrates that he has never contracted by mail or otherwise with a Texas resident, has never committed a tort in Texas, and has never recruited Texas residents for employment.[16] In fact, Rees has never performed any actions that would meet the "doing business" standard of the Long-Arm Statute.[17] As Rees appropriately demonstrates in Section VI(B), below, the assertion of personal jurisdiction over Rees fails to comport with due process considerations concerning minimum contacts. Accordingly, Rees is not subject to service under the Texas Long-Arm Statute, Smith's attempted service on Rees must be quashed, and this action must be dismissed as against Rees under Federal Rule of Civil Procedure 12(b)(5).

Moreover, Smith is required to allege facts on the face of its Complaint necessary to support long-arm service.[18] The allegations required for proper service include (1) defendant is a nonresident; (2) who engages in business in the State of Texas; (3) but does not maintain a regular place of business or designated agent for service of process; (4) the lawsuit arises out of

---

[14] TEX. CIV. PRAC. & REM. CODE ANN. § 17.042.

[15] See Affidavit of Daniel A. Rees (the "Rees Affidavit"), which is attached in the Appendix at Tab "2", at ¶ 1.

[16] See id. at ¶¶ 34–48.

[17] See id.

[18] See Lozano v. Hayes Wheels Int'l, Inc., 933 S.W.2d 245, 247 (Tex. App.—Corpus Christi 1996, no writ).

the business done in the State of Texas; and (5) the nonresident is a party to that lawsuit.[19]  Smith

failed to make any of these allegations, which renders its attempted service on Rees wholly

invalid.   As Texas courts have uniformly held, "a plaintiff must strictly comply with the

requirements of the statute authorizing substituted service" and it is the plaintiff who "has the

burden of affirmatively showing strict compliance with the statute."[20]  This requirement is so

stringent that in deciding whether the plaintiff has strictly complied with the statutory

requirements for long-arm service, the court "may not indulge in presumptions or inferences."[21]

Therefore, the Court should quash Smith's ineffective service of process and dismiss the action

as against Rees pursuant to Federal Rule of Civil Procedure 12(b)(5).

**B.      Rees is Not Subject to Personal Jurisdiction in Texas, and the Action Should be
          Dismissed as to Him**

Federal personal jurisdiction over a nonresident exists if the law of the forum state

provides for the assertion of such jurisdiction, and the exercise of jurisdiction under state law

comports with the dictates of the due process clause of the Fourteenth Amendment to the United

States Constitution.[22]  Under Texas law, a court

> "may assert personal jurisdiction over a nonresident defendant only if the Texas
> long-arm statute authorizes jurisdiction and the exercise of jurisdiction is
> consistent with federal and state due process standards.   The Texas long-arm
> statute reaches 'as far as the federal constitutional requirements of due process
> will allow.'   Thus, the Texas long-arm statute requirements are satisfied if
> exercising jurisdiction comports with federal due process limitations."[23]

---

[19] Id. at 247–48; TEX. CIV. PRAC. & REM. CODE ANN. § 17.044(b).

[20] Boreham v. Hartsell, 826 S.W.2d 193, 195 (Tex.App.—Dallas 1992, no writ).

[21] Id. at 196, n. 2.

[22] See Jobe v. ATR Mktg., Inc., 87 F.3d 751, 753 (5th Cir. 1996).

[23] Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002), cert. denied, 537 U.S.
1131, 123 S. Ct. 1271, 154 L. Ed. 2d 1025 (2003).

The due process clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit."[24] The due process inquiry has two parts. First, for personal jurisdiction to exist, the nonresident defendant must have purposefully established "minimum contacts" with the forum state such that it invoked the benefits and protections of the forum's law and thus reasonably could anticipate being hailed into court there.[25] Second, one must determine that the circumstances are such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."[26]

Minimum contacts are established through either specific or general jurisdiction over the defendant. When a cause of action arises out of, or is related to, a defendant's contacts with the forum, minimum contacts are found to exist and the court may exercise specific jurisdiction.[27] On the other hand, a court may exercise general jurisdiction when a defendant's contacts with the forum state are "sufficiently systematic and continuous to support a reasonable exercise of jurisdiction," though the contacts with the state may be unrelated to the controversy.[28] Courts have held that minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[29]

---

[24] World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980).

[25] Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945).

[26] Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., 480 U.S. 102, 113, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S. Ct. 2174, 2184, 85 L. Ed. 2d 528 (1985).

[27] Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984).

[28] Stuart v. Spaderman, 772 F.2d 1185, 1191 (5th Cir. 1985).

[29] Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958); Asarco, Inc. v. Glenara, Ltd., 912 F.2d 784, 786 (5th Cir. 1990).

159461

8

For the reasons set forth below, Smith cannot establish either specific or general personal jurisdiction over Rees in the State of Texas. Rees has insufficient contacts with the forum state and as such this action should be dismissed as to him.

### 1. Smith Cannot Establish That Rees, Individually, Has Sufficient Minimum Contacts With the State of Texas

The burden of showing the propriety of this Court exercising jurisdiction over Rees rests firmly with Smith. "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of establishing the district court's jurisdiction over the nonresident."[30] Smith wholly failed to satisfy this burden as to both specific and general jurisdiction.

Importantly, Smith cannot merely point to the actions of the former co-trustees of the Egle Trusts ("Predecessor Trustees"), or to the trusts themselves, in an attempt to impute to Rees for personal jurisdiction status any of their alleged conduct or contacts with the forum state. The question of personal jurisdiction is unique to each defendant, hence personal, and each defendant's contacts with the forum state must be assessed individually.[31] The analysis is not altered simply because the defendant is a trustee of a trust and the trustee is the required named party for purposes of the suit. Indeed, a trust is not a legal entity which can sue or be sued, and the trustee is the one through whom any such litigation must be conducted.[32]

Logically then, only the trustee's actions and contacts can be assessed in determining whether jurisdiction exists in the forum state. This Court must therefore assess Rees' contacts

---

[30] Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994), cert. denied, 513 U.S. 930, 115 S. Ct. 322, 130 L. Ed. 2d 282 (1994), quoting Stuart, supra, 772 F.2d at 1192.

[31] Calder v. Jones, 465 U.S. 783, 790, 104 S. Ct. 1482, 1487, 79 L. Ed. 2d 804 (1984).

[32] See Rainbow Trust, supra, 2003 Tex. App. LEXIS at *2; see also Thompson v. Vinson & Elkins, 859 S.W.2d 617, 623 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

with Texas individually and apart from those of any other defendant.[33] Because Rees played no role in the events that resulted in the instant litigation, and because Rees has not had continuous and systematic contacts with the State of Texas, Rees is not subject to personal jurisdiction in this case and Smith's Complaint, as against Rees, should be dismissed.

### a. Smith Has Not Established Specific Jurisdiction as to Rees

When a court attempts to assert specific jurisdiction over a nonresident defendant, a "relationship among the defendant, the forum, and the litigation" is the essential foundation of specific jurisdiction.[34] There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."[35] The "purposeful availment" element "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or the 'unilateral activity of another party or a third person.'"[36] When applied to the facts of this case, these considerations negate the assertion of personal jurisdiction over Rees.

Not only has Smith failed to assert that Rees has any contacts with the State of Texas specifically resulting from the subject matter of this litigation, the evidence presented affirmatively negates any such possibility. As shown in Rees' affidavit, it is clear that Rees did not play any role whatsoever in the negotiation, closing, or execution of the Purchase Agreement

---

[33] See Hanson, supra, 357 U.S. at 251-52 (holding that in determining jurisdiction, a court must assess the Trustee's contacts with the forum state apart from the trust itself); Cf., Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 463-67, 100 S. Ct. 1779, 64 L. Ed. 2d 425 (1980) (holding in a diversity action that it is the Trustee's citizenship that must be determined rather than the beneficiaries, as a Trustee is the real party in interest, not the trusts).

Texas law regarding personal jurisdiction closely mirrors the federal approach. "The United States Supreme Court has made it clear that contacts sufficient to maintain jurisdiction over an individual are those of the individual." Dowdy v. Miller, 122 S.W.2d 816, 823 (Tex. App.—Amarillo 2003, no pet.) (citing Calder, supra, 465 U.S. at 790).

[34] Shaffer v. Heitner, 433 U.S. 186, 204, 97 S. Ct. 2569, 2580, 53 L. Ed. 2d 683 (1977).

[35] Hanson, supra, 357 U.S. at 253.

[36] Burger King Corp., supra, 471 U.S. at 475.

159461

10

dated April 16, 1997 (the "Purchase Agreement"), wherein Smith purchased Tri-Tech Fishing Services, L.L.C. ("Tri-Tech"), a Louisiana limited liability company, from its two equal co-owners, Tri-State Technologies, L.L.C. ("Tri-State") and the Egle Group, L.L.C. (the "Egle Group").[37] Indeed, Rees was not appointed trustee of the Egle Trusts until May 3, 2000, more than three years after the execution of the Purchase Agreement.[38] The mere impossibility of Rees committing acts relevant to any cause of action asserted emphatically negates the exercise of personal jurisdiction over Rees under the specific jurisdiction analysis.

### b. Smith Has Not Established General Jurisdiction as to Rees

Additionally, Smith cannot establish general jurisdiction as to Rees. Unlike the specific jurisdiction analysis which focuses on the cause of action, the defendant, and the forum, a general jurisdiction inquiry is dispute-blind, the sole focus being on whether there are continuous and systematic contacts between the defendant and the forum state.[39] Due process requires that "continuous and systematic" contacts exist between the state and the foreign defendant to exercise general personal jurisdiction, because the cause of action otherwise has no connection with the forum state.[40] General jurisdiction requires a showing of substantial contacts with the forum, and is a more demanding minimum-contacts analysis than for specific jurisdiction.[41]

As shown in the affidavit of Rees, Rees clearly has not engaged in continuous and systematic activities in the State of Texas that would subject him to personal jurisdiction in this

---

[37] See Rees Affidavit at ¶ 49.

[38] Id. at ¶ 4; see also May 3, 2000 Judgment appointing Daniel A. Rees as successor trustee of the Egle Trusts, a copy of which is attached in the Appendix at Tab "3".

[39] Helicopteros, supra, 466 U.S. at 415-16.

[40] Id.

[41] BMC Software v. Marchand, 83 S.W.3d 789, 797 (Tex. 2002) (emphasis added).

state.[42] The negligible contacts outlined in Rees' affidavit, seven separate and distinct trips for individualized reasons over a span of eight years, are a far cry from the types of activities found sufficient to extend personal jurisdiction over a nonresident under the general jurisdiction analysis.[43] As a result, personal jurisdiction cannot be conferred upon Rees through the general jurisdiction analysis.

### 2. The Exercise of Personal Jurisdiction Over Rees in Texas Would Not be Consistent With Traditional Notions of Fair Play and Substantial Justice

Rees adopts by reference all assertions regarding traditional notions of fair play and substantial justice made in the memorandum in support of the motion to dismiss/transfer previously filed on behalf of the Egle Trusts.[44] As asserted in the previous memorandum, exercise of jurisdiction in Texas over Rees would be unreasonably burdensome just as it would be for the Egle Trusts, and would not comport with constitutional due process considerations.

### 3. Personal Jurisdiction Over Rees Cannot Established Through the Conduct of Others

As previously discussed, the case law clearly directs this Court to assess the contacts of Rees himself to determine whether personal jurisdiction will exist in the forum state. Here, the record evidence overwhelmingly demonstrates that Rees does not have sufficient contacts to invoke personal jurisdiction in the State of Texas. Alternatively, in the event that the Court should nevertheless seeks to analyze the Predecessor Trustees' conduct when deciding the issue of personal jurisdiction as to Rees, such an analysis (even if permitted under the law, which it is

---

[42] See Rees Affidavit, at ¶¶ 34–48.

[43] See id. at ¶ 48. General jurisdiction must be assessed by analyzing a defendant's contacts with the forum state over a reasonable number of years up to the date the suit was filed. Access Telecom, Inc. v. MCI Telecomms. Corp., 197 F.3d 694, 717 (5th Cir. 1999). General jurisdiction requires a substantial number and degree of contacts, and not isolated ones. See BMC Software, supra, 83 S.W.3d at 797. For example, general jurisdiction has been found not to exist when a defendant purchased helicopters, negotiated contracts and trained its pilots in Texas. Helicopteros, supra, 466 U.S. at 413–16.

[44] See Docs. 27, 29.

not) would also inevitably lead to the conclusion that Rees is not subject to jurisdiction in Texas.[45]

> **a.** **The Egle Trusts Did Not Contract With a Texas Resident and Thus the Purchase Agreement Cannot Provide a Basis to Confer Personal Jurisdiction on Rees**
>
> > **(1)** **The Egle Trusts are Not "Sellers" Under the Purchase Agreement**

In its response to the Egle Trusts' previous motions to dismiss/transfer, Smith made a number of oft-repeated factual assertions which were arguably false at that time, and which, with the benefit of a more developed factual record, are now demonstrably false. First, Smith repeatedly insisted that the Egle Trusts were parties to the Purchase Agreement at issue in this case. This critical assertion, which is the cornerstone of most of Smith's arguments, is simply not true, no matter how many times Smith says otherwise.

A contract is unambiguous as a matter of law if it can be given a definite and certain legal meaning.[46] When possible, a court should avoid a construction that is unreasonable, inequitable,

---

[45] It is important here to note that although Smith has the burden on this issue, it has thus far failed to cite even a single case that would give the Court a legal basis to depart from the well settled proposition that each defendant's contacts with the forum state must be assessed individually. Calder, supra, 465 U.S. at 790.

Smith attempted to address this issue by citing a Fifth Circuit case interpreting Louisiana law (and citing district courts from Connecticut and New York) regarding the imputation of jurisdictional contacts from a predecessor corporation to a successor corporation. See Smith's Reply in Support of Motion to Set Oral Hearing, filed June 24, 2005 (Doc. 75), at p. 5 (citing Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 653–54 (5th Cir. 2002). However, Patin is clearly distinguishable.

Texas law (which was not at issue in Patin) clearly states that as a general rule, a successor corporation does not automatically become liable for acts of the former corporation. TEX. BUS. CORP. ACT art. 5.10(B)(2); Lockheed Martin Corp. v. Gordon, 16 S.W.3d 127, 134–35 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). At one time, Texas recognized an exception to this general rule when the successor corporation, based on individualized facts, was found to be a "mere continuation" of the predecessor corporation. Phippen v. Deere & Co., 965 S.W.2d 713, 726 (Tex. App.—Texarkana 1998, no writ). The Texas Legislature ultimately closed this exception in subsequent legislation. TEX. BUS. CORP. ACT art. 5.10(B)(2); C.M. Asfahl Agency v. Tensor, Inc., 135 S.W.3d 768, 791 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Following this change of law, several Texas courts have since declined to impute jurisdictional contacts to a successor corporation to establish personal jurisdiction. C.M. Asfahl Agency, supra, 135 S.W.3d at 791; Shapolsky v. Brewton, 56 S.W.3d 120, 139 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

[46] Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997).

159461

or oppressive.[47]  Any interpretation of a contract that gives reasonable meaning to all provisions is preferable to one that leaves a portion of the contract useless, inexplicable, or creates surplusage.[48]

According to the plain language of the Purchase Agreement, the term "Sellers" is defined and limited in the recitals to include only the Egle Group and Tri-State. As the Purchase Agreement itself unambiguously states, it is an agreement only

> "by and between SMITH INTERNATIONAL, INC., a Delaware Corporation ('Purchaser'); The EGLE GROUP, L.L.C. ('EGLE') and TRI-STATE TECHNOLOGIES, L.L.C. ('TRI-STATE') (and collectively referred to as 'Sellers'); and TRI-TECH FISHING SERVICES, L.L.C. (the 'Company')."[49]

The Purchase Agreement further provides that "certain capitalized terms used herein are defined in Section 12.1."[50]  In turn, Section 12.1 provides as follows:

> "12.1 Certain Definitions.  As used in this Agreement, the following terms have the following meanings (such meaning to be equally applicable to both the singular and plural forms of the terms defined):
>
> * * *
>
> "Sellers" has the meaning set forth in the recitals hereof."[51]

Don M. Egle, one of the Predecessor Trustees, signed the Purchase Agreement on behalf of one of the Sellers, the Egle Group.  He did so both as a co-trustee of the Egle Trusts (who

---

[47] Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 530 (Tex. 1987).

[48] Liberty Mut. Ins. Co. v. Am. Employers Ins. Co., 556 S.W.2d 242, 245 (Tex. 1977).

[49] See Purchase Agreement, Exhibit "A" to Second Amended Complaint, at p. 1 (emphasis added).

[50] Id.

[51] See id. at p. 24–27.  A recital is "[t]he formal statement or setting forth of some matter of fact, in any deed or writing, in order to explain the reasons upon which the transaction is founded.  The recitals are situated in the premises of a deed, that is, in that part of a deed between the date and the habendum, and they usually commence with the formal word 'whereas.'"  Black's Law Dictionary (West, 5th ed. 1979) at p. 1142.

were the members of the Egle Group) and as one of the Egle Group's managers.[52] However, that fact in no way expands the meaning of the defined (and capitalized) term of "Sellers." Clearly Smith, as drafter of the Purchase Agreement,[53] intended to limit the term "Sellers" to the Egle Group and Tri-State, as found in the recitals.[54] Had Smith intended to include the Egle Trusts in the definition of "Sellers" (as it now claims), Smith could have easily done so by so defining that term.[55]

Any interpretation or construction that the signature page somehow expands or alters the meaning of an expressly-defined term would be entirely unreasonable and would nullify the definitional section of the contract in contravention of well settled principles of contract law.

---

[52] See signature pages to Purchase Agreement, Exhibit "A" to Second Amended Complaint. In the Purchase Agreement, the Sellers are shown as THE EGLE GROUP, L.L.C. and TRI-STATE TECHNOLOGIES, L.L.C. The signature of the persons signing on their behalf is preceded in each instance by the word "By:" which confirms that the agreement is signed "by" and on behalf of one of those two sellers. Similarly, Smith appears as the purchaser, "By: Richard A. Werner". Mr. Werner readily agreed at his deposition that by signing the Purchase Agreement on behalf of Smith, he did not become personally bound to the agreement. See true and correct copy of excerpts of the deposition of Richard Werner completed on July 20, 2005 ("Werner's Deposition Excerpts"), which is attached in the Appendix at Tab "4". That same logic applies to the Egle Trusts, who signed merely as members of one of the Sellers, the Egle Group, and are not personally bound by the agreement.

[53] See Werner's Deposition Excerpts at p. 47, l. 20 through p. 48, l. 17.

[54] Otherwise, there would be no rational basis for Smith to have included a definition of "Sellers" in the recitals and definition section. Again, Texas courts have traditionally preferred to interpret a contract in such a way that gives meaning to all provisions, and does not render any provision to be useless or inexplicable. See Liberty Mut. Ins. Co., supra, 556 S.W.2d at 245. Moreover, when there is an ambiguity in the language used (which is denied here in the first instance), the law is well-established that the contract language will be construed strictly against the party who drafted it since that party is responsible for the ambiguity. Gonzalez v. Mission Am. Ins. Co., 795 S.W.2d 734, 737 (Tex. 1990). Smith drafted the Purchase Agreement, and is now the one claiming that the term "Sellers" has a meaning other than as expressly defined in the contract. See Werner's Deposition Excerpts at p. 47, l. 20 through p. 48, l. 17.

[55] Smith's interpretation of the term "Sellers" to include the Egle Trusts is not only contrary to the definition of that term as it appears in the Purchase Agreement, but such an interpretation is also contrary to the other provisions of that agreement. For example, the Purchase Agreement recites that "Egle [the Egle Group] and Tri-State each own a fifty percent (50%) interest in the Company [Tri-Tech]". See Purchase Agreement at p. 1. Further, the agreement recognizes that "Sellers desire to sell and Purchaser [Smith] desires to purchase the entire right, title, and interest of Sellers in the Company [Tri-Tech]...." Id. Any interpretation the term "Sellers" to also include the Egle Trusts (which were not owners of any part of Tri-Tech), makes no sense since the Egle Trusts had no right, title, or interest in Tri-Tech to sell to Smith, and Smith had no reason to "desire to purchase" any such non-existent right, title, or interest from the Egle Trusts.

Similarly, any construction of the term "Sellers" that differs from the explicit definition of that term would be unreasonable and inequitable.

The fact that Smith now claims that the Egle Trusts somehow transformed into a "Seller" seven years after it specifically excluded the Egle Trusts from the very definition of that term epitomizes the continually inconsistent positions Smith has taken over the years in relation to these issues.[56] In fact, in the trial of the underlying case (the judgment from which Smith asserts

---

[56] As alluded to in the Introduction section of this memorandum, the deposition taken on July 20, 2005 of Richard Werner, president of Smith Services, exposes other inconsistent positions taken by Smith directly calling into question its assertions for personal jurisdiction. For instance, Werner testified that the only representations and warranties made by the Egle Trusts were allegedly made at the time of closing in Louisiana. See Werner's Deposition Excerpts at p. 57, l. 15 through p. 58, l. 24; p. 67, ll. 16–23; see also p. 25, l. 24 through p. 26, l. 14; p. 29, l. 25 through p. 30, l. 3. Yet in his affidavit filed in response to the Egle Trusts' previous motion to dismiss/transfer, Werner claimed the Egle Trusts made representations and warranties to Smith in Houston, Harris County, Texas. See Affidavit of Richard Werner ("Werner Affidavit"), attached as Exhibit "H" to Smith International, Inc.'s Response Opposing Defendant's Motion to Dismiss, Doc. 52. Upon further questioning, however, Werner was unable to identify any such alleged representations or warranties by the Egle Trusts. See Werner's Deposition Excerpts at p. 67, ll. 16–23. This is not surprising, considering the fact that Werner did not meet the predecessor trustee of the Egle Trusts until the day of closing, if at all, and all interaction prior to closing occurred only with Ray Daugherty and other representatives of the company Smith was purchasing, Tri-Tech. See id. at p. 46, l. 15 through p. 47, l. 15.

For another example, Werner averred in his affidavit that periodic payments were made to the "Defendants" (which term allegedly included the Egle Trusts), and that these payments were sent from Houston, Harris County, Texas. See Werner Affidavit at p. 1–2. Yet in his deposition, Werner was unable to identify a single payment made to the Egle Trusts directly from Smith, whether "periodic" or otherwise. See Werner's Deposition Excerpts at p. 16, ll. 4–17; p. 79, l. 18 through p. 79, l. 19. Indeed, the evidence here confirms that all payments received by the Egle Trusts as a result of this transaction came from a Louisiana escrow account and were distributed directly by the Louisiana law firm Liskow & Lewis, not from Smith. See id. Along the same lines, Werner further averred that the "Defendants" somehow directed Smith in the distribution of the sale proceeds. However, the record evidence clearly demonstrates that Smith was not the entity who made the distributions. Rather, Smith's lone obligation was to wire transfer the funds into an escrow account in Louisiana which would later be distributed by the escrow agent. See id. Further, despite Werner's averment that the Egle Trusts continued to receive payments from Smith, in the underlying trial Smith took a contradictory position when Werner disclaimed that Smith had any connection whatsoever with the disbursement of the proceeds or the documents that directed how these disbursements would be made. See Werner's testimony in the underlying Louisiana Lawsuit, which is attached in the Appendix at Tab "5", at p. 354, 366.

Finally, it was Werner's conclusory allegation that the attorneys for the Egle Group and Tri-State, Liskow & Lewis, were also representing the Egle Trusts in the underlying sale. See Werner's Deposition Excerpts at p. 25, ll. 17–23. Werner pointed to an opinion letter from Liskow & Lewis (which was attached as an exhibit to the Purchase Agreement) as the alleged basis for his mistaken factual assertion. See April 16, 1997 Opinion letter from Joseph C. Giglio, Jr. of Liskow & Lewis, which is attached in the Appendix at Tab "6", a copy of which is also attached as Exhibit "B" to the Purchase Agreement. However, that opinion letter clearly spells out precisely who Liskow & Lewis represented — the "Sellers", which, as in the Purchase Agreement itself, is once again defined only as the Egle Group and Tri-State. See id. Further, during the trial of the underlying action, Smith itself called Giglio as a witness, and he confirmed that he "never" represented the Egle Trusts. See true and correct copy of excerpts from the trial testimony of Joseph C. Giglio, Jr., which is attached in the Appendix at Tab "7".

gives rise to its claims here), when arguing in support of its motion for directed verdict, Smith

represented to the court that although hundreds of documents existed in evidence, there was not

one that could be said to form a contract between the Egle Trusts and Smith.[57]　Smith's earlier

representation was correct—the Egle Trusts did not ever contract with a Texas resident.　As non-

parties, neither Rees nor the Trusts are now subject to any future consequences of the contract

(such as indemnity for the alleged breach of representations and warranties) and, consequently,

the Purchase Agreement cannot be the basis for the assertion of personal jurisdiction over Rees.

### (2)　The Egle Trusts are Merely "Members" of the Egle Group

The Predecessor Trustee that signed the Purchase Agreement on behalf of the Egle Trusts

signed only in their capacity as <u>members</u> of the Egle Group.　Under both Texas and Louisiana

law, absent circumstances not alleged by Smith to be present here, the members of a limited

liability company are not personally liable for the debts, obligations, or liabilities of the limited

liability company.[58]

The Egle Group is a legal entity wholly separate and apart from the Egle Trusts.　Don M.

Egle merely signed the Purchase Agreement as Trustee on behalf of the Egle Trusts in their

---

[57] <u>See</u> certified copy of excerpts from the Directed Verdict Argument in the underlying Louisiana Lawsuit, which is attached in the Appendix at Tab "8", at p. 600.

[58] <u>See</u> Tex. Rev. Civ. Stat. Ann. art. 1528n, § 4.03(A) (Vernon 1997) (" ... a member or manager is not liable for the debts, obligations or liabilities of a limited liability company including under a judgment decree, or order of a court.") Indeed, "a member of a limited liability company is not a proper party to proceedings by or against a limited liability company...." <u>Id.</u> at § 4.03(C).　Relying on these provisions, the court in <u>Black v. Bruner</u>, No. 04-02-00733-CV, 2003 Tex. App. LEXIS 1887 (Tex. App.—San Antonio March 5, 2003, no pet.), which is attached in the Appendix at Tab "9", addressed the claims of the plaintiff who was attempting to enforce an indemnity obligation against Black, who was a member of a limited liability company, WBB. The plaintiff sought indemnity under two separate agreements: one provided for the plaintiff to be indemnified by WBB, and the other provided for the plaintiff to be indemnified by a limited partnership of which WBB was the general partner. In its ruling, the court of appeal held that "[b]oth agreements are signed by Black and others as members of WBB.　As a member of WBB, Black is not individually liable for the obligations of WBB...." <u>Id.</u> at *1.　Louisiana law is virtually identical: "...no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company." <u>See</u> La. R.S. 12:1320(B), which is attached in the Appendix at Tab "10".　Further, as in Texas, "a member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company...." <u>See</u> La. R.S. 12:1320(C).

stated capacity as members of the limited liability company, much in the same way Werner
signed the contract on behalf of Smith in his capacity as an officer of Smith (another separate
legal entity).[59]  The signature here serves to obligate the "Sellers" only, and does not result in
personal liability in the Egle Trusts, as members of the Egle Group.  Accordingly, because the
Egle Trusts are not parties to the Purchase Agreement, and are not subject to liability under the
indemnity provision sued on, they cannot be said, therefore, to have contracted with a Texas
resident to confer jurisdiction on them or Rees.[60]

> **(3)  The "Consent" Does Not Create Personal Liability For the
> Egle Trusts**

Lastly, Smith has argued that a Consent signed by the co-trustee, Janet E. Harrison,
somehow expands the capacity in which Don Egle signed the Purchase Agreement and allegedly
"binds" the Egle Trusts personally to that agreement.[61]  As was the case with the definition of
"Sellers" in the Purchase Agreement, however, the clear and unambiguous language of the
Consent form plainly undermines this argument, because it is not an expansion of Don Egle's
authority, it is instead a <u>limitation</u>.  The form grants Don M. Egle, one of the Predecessor
Trustees, the limited "authorization to execute by and on behalf of the Trusts, <u>as a member of the
Egle Group, L.L.C.</u>, the Purchase Agreement . . ."[62]  This Consent was statutorily necessary
under Louisiana trust law, as Don M. Egle could not have acted alone on behalf of the Egle

---

[59] <u>See</u> signature page of Purchase Agreement, Exhibit "A" to Second Amended Complaint.

[60] Smith has admitted as much through the deposition testimony of Werner.  Werner, who signed the
Purchase Agreement as an officer of Smith, unequivocally stated that had Smith failed to pay the purchase price
after executing the contract, he would not thereafter have been personally responsible for payment of that sum to the
Sellers.  <u>See</u> Werner's Deposition Excerpts at p. 118, l. 3 through p. 120, l. 23.  Of course this is correct, as Werner
signed as an officer and disclosed agent of Smith, a corporation, and any liability under the contract will thus be
burdened by Smith.  Likewise, the trustee for the Egle Trusts signed the Purchase Agreement in the Egle Trusts'
capacity as disclosed members of the Egle Group, a limited liability company.

[61] <u>See</u> Consent form, Exhibit "B" to Second Amended Complaint.

[62] <u>See</u> <u>id.</u> at ¶ A (emphasis here).

159461

18

Trusts without the written consent of the other co-trustee.[63] Any authorization the Predecessor Trustees had to bind the Egle Trusts was expressly limited by the unambiguous language of the Consent form, which confirms that the Predecessor Trustees were authorized to sign that agreement on behalf of the Egle Trusts only in their capacity as members of one of the Sellers, the Egle Group.

Accordingly, the signature by the Predecessor Trustee on the Purchase Agreement on the Egle Trusts' behalf is limited in scope and cannot serve as a basis to attempt to strip the Egle Trusts of the protection from personal liability afforded to them as members of a limited liability company.[64] Indeed, acting alone, Don M. Egle was statutorily unable to bind the Egle Trusts in their individual capacity since (without the express consent of the co-trustee) he had no authority under Louisiana law to do so. Any purported reliance by Smith on Don Egle's signature as allegedly binding the Egle Trusts to the Purchase Agreement in any capacity other than as "Members" of one of the Sellers would be unreasonable in the face of the Consent, which expressly limited Don Egle's capacity to sign the Purchase Agreement on behalf of the Egle Trusts solely in that capacity.

>    **b.    The Egle Trusts and the Predecessor Trustees Were Not Involved in the Underlying Negotiation and Sale**

The transaction by which Smith acquired Tri-Tech, a Louisiana company, from its two Louisiana owners (Tri-State and the Egle Group) was negotiated without any involvement from Rees, the Egle Trusts or the Predecessor Trustees.[65] The only individual who Smith can

---

[63] See La. R.S. 9:2113, a copy which is attached in the Appendix at Tab "11", which requires that when there a two trustees, they must both act in order for their actions to bind the trust. Absent the consent of the co-trustee, Don Egle would have been without authority to sign any documents. However, the grant of authority to Don Egle to act on the trusts' behalf is limited by the terms of the consent.

[64] See footnote 58.

[65] See Rees Affidavit at ¶ 49; see also Affidavit of Don M. Egle (the "Egle Affidavit"), which is attached to the Appendix of the Egle Trusts' previous motion to dismiss (Docs 29 and 30), at ¶ 52.

specifically name as providing information prior to the closing was Ray Daugherty ("Daugherty").[66] In fact, Werner testified that Daugherty contacted Smith to inquire about a possible sale and thereafter traveled to Houston for further discussions.[67] Werner was clear that at no time did the Predecessor Trustees contact Smith, travel to Texas, or provide any information for the negotiations and sale of Tri-Tech, let alone information relating to the membership interests in the Egle Group.[68] As outlined earlier in footnote 56, Werner's deposition testimony on this issue stands in direct contravention to his affidavit filed in support of Smith's previous response to the Egle Trusts' motion to dismiss/transfer.[69]

### c. There Were No Receipts of Monies From Texas

Smith argued in its memorandum in support of its response to the earlier motion to dismiss/transfer that "Defendants received and acknowledged receipt of monies and other valuable consideration from Houston, Harris County, Texas."[70] However, Werner testified to the contrary in his deposition by stating that Smith was only required to deposit the sale proceeds into an escrow account set up in Louisiana.[71] Tellingly, he knew of no disbursements to the Egle Trusts directly from Smith.[72] The documents relating to the allocation of the sale proceeds were agreements to which Smith was not a party.[73] As such, Smith cannot now claim that any alleged

---

[66] See Werner's Deposition Excerpts, at p. 13, ll. 3 through p. 16, l. 5.

[67] See id.

[68] See id. at p. 15, l. 25 through p. 16, l. 15; p. 20, ll. 8–11.

[69] See Doc. 52.

[70] See Smith's memorandum at p. 10.

[71] See Werner's Deposition Excerpts at p. 78, l. 18 through p. 79, l. 19.

[72] See id. at p. 76, ll. 11–16.

[73] See Agreement Relating to the Disbursement of Proceeds of the Sale by Egle Group, L.L.C. and Tri-State Technologies, L.L.C. to Smith International, Inc., which is attached to the Appendix at Tab "12", and Authorization to Escrow Agent, which is attached to the Appendix at Tab "13". Smith did not sign either of these agreements because it was not a party to the determination of how and where the sale proceeds would be distributed.

159461

20

disbursement allocations resulting from these documents were directed to be paid by Smith from Houston, Texas. Accordingly, the distribution of sale proceeds to the Egle Trusts from an escrow account in Louisiana offers no jurisdictional tie to Texas for Rees or any of the Egle Trusts.

> **d.** **No Misrepresentations or Warranties Were Made in Texas by Rees or the Predecessor Trustees**

Smith also alleges that "Defendants made various representations and warranties in the course of the sale of Tri-Tech . . ."[74] Werner's affidavit vaguely states that these misrepresentations "were made to Smith at Smith's place of business in Houston, Harris County, Texas."[75] Yet Werner once again wholly contradicted his earlier statements by testifying in his deposition that none of the Predecessor Trustees ever contacted Werner regarding the Purchase Agreement nor traveled to Texas for any reason.[76] Further, Werner testified that the only representations and warranties made, if at all, by the Egle Trusts were those in the purchase agreement and other documents signed during and after the closing.[77] Importantly, this all occurred in Louisiana, as Werner admitted in his deposition testimony.[78]

---

Smith's only obligation was to wire transfer the purchase money to Louisiana to the escrow account of the Sellers, the Egle Group and Tri-State. This obligation arose solely through the terms of the Purchase Agreement. See Purchase Agreement, Exhibit "A" to Second Amended Complaint, at p. 2 Section 2.1.

[74] See Affidavit of Richard Werner ("Werner Affidavit"), Exhibit "H" to Doc. 52.

[75] Id.

[76] See Werner's Deposition Excerpts, at p. 13, ll. 3 through p. 16, l. 15.

[77] See id. at p. 57, l. 15 through p. 58, l. 24; p. 67, ll. 16–23. Further, although Smith now claims that its decision to proceed with the transaction was premised in part on alleged representations and warranties made by the Egle Trusts before the closing on April 16, 1997, Werner admitted in his deposition that no representations were made to Smith by the Predecessor Trustees other than in the April 16, 1997 Purchase Agreement (and the related documents bearing that same date). See id. at p. 57, l. 15 through p. 58, l. 24; p. 67, ll. 16–23. Accordingly, when Smith's Board of Directors ratified and adopted a resolution to purchase Tri-Tech on April 11, 1997, it is chronologically impossible for it to have done so in reliance on any representations made by the Egle Trusts. See Certificate dated April 11, 1997, attached as Exhibit "H-1" to Doc. 52.

[78] See Werner's Deposition Excerpts at p. 57, l. 15 through p. 58, l. 24; p. 67, ll. 16–23.

159461

21

These contradictory statements and positions by Smith clearly illustrate that its earlier averments for personal jurisdictional should be given no weight, and the Court should no longer be required to accept them as true. Consequently, the Court should find that Rees has no minimum contacts with the State of Texas sufficient for a finding of personal jurisdiction and should dismiss Smith's Complaint as against Rees. Moreover, because this Court cannot exercise personal jurisdiction over Rees, Smith's attempted long-arm service on Rees is insufficient and should be quashed, and Smith's Complaint, as against this defendant, should be dismissed for the same reason under Federal Rule of Civil Procedure 12(b)(5).

**C.      Venue is Improper in the Southern District of Texas**

Smith has brought this lawsuit in the Southern District of Texas to attempt to enforce an alleged indemnity obligation with respect to a Louisiana judgment, allegedly on the basis of a contract by which it purchased in Louisiana a Louisiana company from its Louisiana owners. Smith has expressly invoked 28 U.S.C. § 1391(a) as the alleged statutory basis for laying venue in the Southern District of Texas.[79] Under that statute, once a defendant has raised the improper venue issue by motion, the burden of sustaining venue rests with the plaintiff.[80] In this action, venue is not proper in this judicial district under 28 U.S.C. § 1391(a), because (1) none of the defendants resides in this judicial district; (2) this judicial district is not one in which a substantial part of the events or omissions giving rise to the claims occurred; and (3) there is another district in which this action might have been brought.[81]

---

[79] See Second Amended Complaint, at ¶ 2.1.

[80] Seariver Mar. Fin. Holdings, Inc. v, Pena, 952 F. Supp. 455, 458 (S.D. Tex. 1996).

[81] 28 U.S.C. § 1391(a).

Here, subsection (a)(1) of Section 1391 clearly does not apply, because none of the defendants resides in this judicial district — they all reside in the State of Louisiana.[82] Similarly, subsection (a)(3) also clearly does not apply. As discussed more fully below, the Western District of Louisiana is a district in which this action might have been brought. Accordingly, Rees anticipates that Smith will argue venue is allegedly proper here based on subsection (a)(2). That argument would be wrong, and venue under that provision is likewise improper here, because "a substantial part of the events or omissions" giving rise to plaintiff's alleged claims against Rees did not occur in this district, but occurred instead (if at all) in the State of Louisiana.[83]

Whether venue could be proper in this district under subsection (a)(2) requires an examination of the facts that give rise to plaintiff's alleged claims, because Section 1391(a)(2)

> "focuses venue on those districts in which 'the events or omissions supporting a claim [are] substantial.' Only locations hosting a 'substantial part' of the events that 'directly' give rise to a claim are relevant. Moreover, because the general-venue statute protects the defendant, courts often focus on the relevant activities of the defendant, rather than the plaintiff, in determining where a substantial part of the underlying events occurred."[84]

In this case, it cannot be said that a substantial part of the events or omissions giving rise to plaintiff's claims occurred in this district.

Smith entirely fails to allege that Rees engaged in business in Texas, and its Second Amended Complaint is likewise devoid of any facts to support such an assertion. Indeed, the only business transaction described in the complaint is the transaction by which Smith acquired Tri-Tech, yet as explained above, this did not include acts by Rees or the Egle Trusts. This was a Louisiana transaction which was negotiated, closed, and performed in Louisiana. If, as alleged

---

[82] See Second Amended Complaint, at ¶¶ 1.2–1.4.

[83] 28 U.S.C. § 1391(a)(2).

[84] Abramoff v. Shake Consulting, L.L.C., 288 F. Supp. 2d 1, 4 (D.C. Cir. 2003) (internal citations omitted).

by Smith, any of the representations and warranties made at the time the sale were breached (which is denied in the first instance), any such breach would necessarily have occurred at the time of closing, which took place in the Western District of Louisiana.  This was confirmed by Werner when he testified that the representations and warranties made by the Egle Trusts, if any, were made at the closing of the sale on April 16, 1997.[85]  In contrast, none of the events giving rise to the causes of action at issue in this lawsuit, much less a substantial part of said events, occurred in the Southern District of Texas.

1.      **This Action Should be Dismissed for Improper Venue, Pursuant to 28 U.S.C. § 1406(a)**

As shown above, venue in the Southern District of Texas is improper.   Under these circumstances, this Court has authority to dismiss this action pursuant to 28 U.S.C. § 1406(a). That statute provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district <u>shall</u> dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."[86]  Whether to dismiss or transfer a suit filed in an improper venue "is in the court's discretion."[87]  Smith cannot show that it would be in the interest of justice to transfer this action instead of dismissing it.   Accordingly, this Court should exercise its discretion and should dismiss Smith's action, which was filed in an improper venue.

2.      **Alternatively, This Action Should be Transferred to the Western District of Louisiana in the Interest of Justice, Pursuant to 28 U.S.C. § 1406(a)**

When an action is filed in an improper venue, the court may either dismiss the action or transfer it to a district in which the action could have been brought.   Accordingly, if this Court

---

[85] <u>See</u> Werner's Deposition Excerpts at p. 57, l. 15 through p. 58, l. 24; p. 67, ll. 16–23.

[86] 28 U.S.C. § 1406(a) (emphasis added).

[87] <u>Pugh v. Arrow Elecs., Inc.</u>, 304 F. Supp. 2d 890, 896 (N.D. Tex. 2003).

should decline to dismiss this action (as to which venue is not proper in this district), then, alternatively, this Court should, in the interest of justice, transfer this action to the Western District of Louisiana, a district in which this action could have been brought.[88]

**D.    Even if Venue Were Proper Here, This Action Should, For the Convenience of the Parties and the Witnesses and in the Interest of Justice, be Transferred to the Western District of Louisiana, Which is a More Convenient Venue**

Rees adopts by references all assertions regarding the transfer of venue in this case for the convenience of the parties and witnesses and in the interest of justice made in the previous motion to dismiss/transfer filed on behalf of the Egle Trusts.[89]

## VII. CONCLUSION

Based on the foregoing, Daniel A. Rees, as trustee of the Egle Trusts, respectfully urges this Court to grant his motion, and accordingly, to (a) quash plaintiff's purported service on him under the Texas Long-Arm Statute; (b) dismiss plaintiff's complaint as against him for lack of jurisdiction over the person and for insufficiency of service of process; (c) dismiss plaintiff's complaint as against Rees for improper venue, or alternatively, in the interest of justice, transfer this action from an improper venue to a proper venue, namely, to the United States District Court for the Western District of Louisiana; and (d) further alternatively, if venue is proper here, transfer to a more convenient venue for the convenience of the parties and witnesses and in the interest of justice, namely, to the United States District Court for the Western District of Louisiana, a district where this action could have originally been brought and which stands as the first-filed action as against Rees.

---

[88] Aguacate Consol. Mines, Inc. v. Deeprock, Inc., 566 F.2d 523, 524 (5th Cir. 1978) (Section 1406(a) permits transfer of cases even if both proper venue and personal jurisdiction are lacking).

[89] See Docs. 27, 29.

159461

Respectfully submitted,

Norman W. Peters, Jr.
State Bar No. 00788194
Federal Bar No. 17336
KASOWITZ, BENSON, TORRES &
    FRIEDMAN LLP
700 Louisiana Street, Suite 2200
Houston, Texas 77002-2730
(713) 220-8800
Fax: (713) 222-0843

ATTORNEY-IN-CHARGE FOR
DEFENDANTS THE EGLE GROUP,
L.L.C., THE EGLE TRUST FOR
MICHELLE A. EGLE, THE EGLE TRUST
FOR JOHN M. EGLE, JR., and THE EGLE
TRUST FOR LAUREN E. EGLE

OF COUNSEL:
J. Michael Wilson
State Bar No. 24047125
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
700 Louisiana, Suite 2200
Houston, Texas 77002
Telephone:    (713) 220-8800
Facsimile:    (713) 222-0843

159461

26

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record pursuant to the Federal Rules of Civil Procedure on this the 25th day of July 2005.

Geoffrey H. Bracken
GARDERE WYNNE SEWELL LLP
1000 Louisiana, Suite 3400
Houston, Texas 77002-5007

David B. Dickinson (via electronic mail per election under Fed. R. Civ. P. 5)
LUNDEEN & DICKINSON, L.L.P.
1916 Baldwin
Houston, Texas 77002

Norman W. Peters, Jr.

159461

27